**Robert and Teresa PHELPS and Bobby Phelps, et al., Appellants– Plaintiffs,**

v.

**Peter SYBINSKY, et al., Appellees– Defendants.**

No. 49A05–9912–CV–554.

Court of Appeals of Indiana.

Oct. 20, 2000.

Jacquelyn E. Bowie, Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis, Indiana, Attorneys for Appellants.

Karen M. Freeman–Wilson, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellees.

**OPINION**

MATHIAS, Judge

This case involves a 1998 statute that requires the filing of a petition to terminate parental rights when a child in need of services ("CHINS") "has been removed from a parent and has been under the supervision of a county office of family and children for not less than fifteen (15) months of the most recent twenty-two (22) months...." Ind.Code § 31–35–2–4.5 (1998). The Phelpses brought a class action challenging the statute on several grounds, and the trial court granted the defendants' motion to dismiss. The Class raises the following issues on appeal:

I. Whether the Indiana statute violates federal law;

II. Whether the Indiana statute violates the separation of powers provision of Article III, Section 1 of the Indiana Constitution; and

III. Whether the Indiana statute violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

We affirm the trial court.

**Facts and Procedural History**

The facts are not in dispute. Bobby Phelps, an autistic child with behavioral problems, was removed from his parents' home in November 1993 and placed in foster care. His parents love him, continue to visit him and maintain a close relationship with him, despite this out-of-home placement. A permanency plan created by the Marion County Office of Family and Children ("MCOFC") has recommended long term foster care or institutional care with regular parental visitation to be in Bobby's best interest.

MCOFC notified the Phelpses that pursuant to Indiana Code § 31–35–2–4.5 it would be filing a motion to terminate parental rights because Bobby had been placed out of their home for at least fifteen of the past twenty-two months. MCOFC also informed the Phelps that it would be filing a motion to dismiss the petition because it did not believe that termination was in Bobby's best interest.

On the day before the statute at issue was to take effect, counsel for the Phelpses filed a Class Action Complaint for Declara-

tory and Injunctive Relief, alleging that the statute violated federal law and provisions of both the state and federal constitutions. On August 31, the trial court enjoined MCOFC from filing a petition to terminate parental rights and certified the class action. The defendants moved to dismiss pursuant to Trial Rule 12(B)(6) and the parties also filed cross-motions for summary judgment. After a hearing, the trial court entered findings of fact and conclusions of law granting the defendants' motion to dismiss.

### Standard of Review

■■■ A motion to dismiss under Indiana Trial Rule 12(B)(6) tests the legal sufficiency of a claim, not the facts that support it. *Collard v. Enyeart,* 718 N.E.2d 1156, 1158 (Ind.Ct.App.1999), *trans. denied.* We look at the complaint in the light most favorable to the plaintiffs, with every inference drawn in their favor, to determine if there is any set of allegations under which the plaintiffs could be granted relief. *Ratliff v. Cohn,* 693 N.E.2d 530, 534 (Ind.1998)

### The Federal and State Statutes

In 1980, Congress enacted the Adoption Assistance and Child Welfare Act. *See* 42 U.S.C. §§ 620–628b, 670–679b. The federal Act ("the Act") authorized federal subsidies to the States for the operation of their child welfare programs but conditioned that funding on certain requirements.

This case arises from requirements placed in the 1997 amendments to the Act, which sought to ensure that children did not spend long periods of their childhoods in foster care or other settings designed to be temporary. The 1997 amendment included a provision designed to make adoption of these children more feasible. The Act provides in relevant part:

[I]n the case of a child who has been in foster care under the responsibility of the State for 15 of the most recent 22

months, ... the State shall file a petition to terminate the parental rights of the child's parents (or, if such a petition has been filed by another party, seek to be joined as a party to the petition), and, concurrently, to identify, recruit, process, and approve a qualified family for an adoption, unless—

...

(ii) a State agency has documented in the case plan (which shall be available for court review) a compelling reason for determining that filing such a petition would not be in the best interests of the child....

42 U.S.C. § 675(5)(E) (Supp. III 1997).

Prior to 1998, Indiana's termination statute allowed the county OFC attorney or prosecuting attorney[1] to seek termination of parental rights by filing a petition that was *required* to allege four things:

(A) The child has been removed from the parent for at least six (6) months under a dispositional decree;

(B) there is a reasonable probability that:

 (i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

 (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind.Code § 31–35–2–4(b)(2) (Supp.1997). If the court found all of these allegations to be true by clear and convincing evidence, it was required to terminate the parent-child relationship. *Id.* § 31–35–2–8; *Tipton v. Marion County Dep't of Pub. Welfare,* 629 N.E.2d 1262, 1265 (Ind.Ct. App.1994).

---

1. The statute also allows a child's court appointed special advocate or guardian ad litem to seek termination of parental rights. However, any action taken by these persons is not at issue in this case. Therefore, we refer only to the state actors.

In response to the 1997 amendments to the federal Act, the General Assembly enacted Public Law No. 35–1998, effective July 1, 1999, which significantly changed existing law by requiring the attorney for the county office of family and children or the prosecuting attorney to file a petition to terminate parental rights for a CHINS who has been removed from a parent and placed under the supervision of a county office of family and children for not less than fifteen of the most recent twenty-two months. *See* Ind.Code § 31–35–2–4.5(a)(2) (Supp.1999). Although the statute provides no exceptions to the requirement that a petition be filed, it does require that the petition "[i]ndicate whether at least one (1) factor ... that would apply as the basis for filing a motion to dismiss" exists. *Id.* § 31–35–2–4(b)(3). One of these factors is "[t]hat the current case plan prepared by or under the supervision of the county office of family and children under IC 31–34–15 has documented a compelling reason based on facts and circumstances stated in the petition or motion, for concluding that filing, or proceeding to a final determination of, a petition to terminate the parent-child relationship is not in the best interests of the child." *Id.* § 31–35–2–4.5(d)(1). If this or any other ground for dismissal applies, the Indiana statute requires the filing of a motion to dismiss. *Id.* § 31–35–2–4.5(d). The 1998 Indiana statute also added the requirement that a hearing on a petition to terminate parental rights be held within ninety days of its filing. *See* Ind.Code § 31–35–2–6 (1998).

## I. Violation of Federal Law

The Class first contends that the Indiana statute violates federal law because the federal Act requires the filing of a petition to terminate "unless" it is not in the best interest of the child, but the Indiana statute requires the filing of a petition even when it is not in the best interest of the child. The State responds that "[t]he two statutes accomplish the same end, although they take slightly different approaches to do so." Brief of Appellee at 12. We agree with the State.[2]

Under the federal statute, after a child has been placed out of the parental home for fifteen of the last twenty-two months, a county attorney makes an assessment of the "best interests of the child" and, based on that assessment, either files or does not file a petition to terminate parental rights. Under the Indiana statute, a county attorney must make the same assessment about the child's best interests, but must file the petition even if he or she believes that termination is not in the child's best interests. In such circumstances, however, the county attorney must note in the petition to terminate that the case plan contains a compelling reason why termination is not in the child's best interests. *See* Ind.Code § 31–35–2–4(b)(3) (Supp.1999). The county attorney is further required to follow the petition with a motion to dismiss. *Id.* § 31–35–2–4.5(d). Within ninety days of the filing of the petition to terminate, the trial court must hold a hearing on the matter and determine whether termination is in the best interests of the child. If the child's case plan has documented a compelling reason why termination is not in the child's best interests, and the court finds this to be true by a preponderance of the evidence, then it must dismiss the petition to terminate. *Id.* Even if the petition is not dismissed pursuant to section 4.5, termination under section 4 will occur only if the State proves by clear and convincing

---

**2.** Neither party discusses whether this Court has jurisdiction to decide this issue or what the remedy for a violation would be. This is not a constitutional claim that would require us to strike down the statute (or part of the statute) if it is found constitutionally infirm. Rather, the claim deals with a purported violation of a federal statute that is tied to condi-

tional funding for a state. Thus, a violation would presumably lead to the cessation of funding from the federal government. Because we find no violation of the federal statute, however, we need not decide today what remedy, if any, this court would be able to impose.

evidence that termination is in the child's best interests pursuant to section 4(b)(2)(C).

In sum, the only difference between the federal and state statutes is the involvement of the trial court in determining the child's best interests. Under the federal statute, a county attorney's review and determination will prevent some petitions from ever being filed, while under the Indiana statute petitions in all cases must be filed and the trial court is required to make the determination of the child's best interests. We agree with the State that the Indiana procedure "does even more to guard the best interest of children in foster care." Brief of Appellee at 13. The means by which it accomplishes this do not violate federal law.

## II. State Constitutional Challenges

The Class next asserts that the Indiana statute violates the separation of powers provision of the Indiana Constitution by usurping the power of both the executive and judicial branches of government.

Article III, Section 1 of the Indiana Constitution provides: "The powers of Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the powers of another, except as in this Constitution expressly provided." Our supreme court has explained the separation of powers provision as being "the keystone of our form of government" and has required that its provisions be "strictly construed." *Book v. State Office Bldg. Com'n*, 238 Ind. 120, 159, 149 N.E.2d 273, 293 (1958). "The true interpretation of this [separation of powers] is, that any one department of the government may not be controlled or even embarrassed by another department, unless so ordained in the Constitution." *In re Judicial Interpretation of 1975 Senate Enrolled Act No. 441*, 263 Ind. 350, 352, 332 N.E.2d 97, 98 (1975) (quoting *State v. Shumaker*, 200 Ind. 716, 721, 164 N.E. 408,

409 (1928)). "The separation of powers doctrine recognizes that each branch of the government has specific duties and powers that may not be usurped or infringed upon by the other branches of government." *State v. Monfort*, 723 N.E.2d 407, 411 (Ind. 2000).

The Indiana Supreme Court has set forth the following deferential standard of review for constitutional challenges:

"Legislation under constitutional attack ... is clothed in a presumption of constitutionality. The burden to rebut this presumption is upon any challenger, and all reasonable doubts must be resolved in favor of an act's constitutionality. When a statute can be construed to support its constitutionality, such construction must be adopted." Further, it is the challenger's burden to show that the alleged constitutional defects are clearly apparent.

*Matter of Tina T.*, 579 N.E.2d 48, 56–57 (Ind.1991) (quoting *Miller v. State*, 517 N.E.2d 64, 71 (Ind.1987)) (citations omitted).

### A. Infringement of Executive Power

■ Article IV, Section 1 of our state constitution vests the "Legislative authority of the State" in the General Assembly, and Article V, Section 16 provides that "[t]he Governor shall take care that the laws are faithfully executed." The Class asserts that the 1998 statute impermissibly usurps executive power by requiring executive branch personnel (the Office of Family and Children) to file a petition to terminate in cases in which a child has been placed outside the parental home for at least fifteen months. The State responds that although the Indiana statute restricts executive discretion there is nothing unconstitutional about such a restriction. "To the contrary, legislative restriction of executive discretion is almost the definition of legislative authority with respect to the Executive Branch." Brief of Appellee at 15–16.

Before the 1998 Indiana statute, the OFC was given discretion to file a petition for termination when a number of conditions were met, including that termination was in the best interest of the child. After the 1998 law, the OFC was required to file a petition to terminate when a child was placed outside the home for fifteen of the past twenty-two months. Although this is plainly a curtailment of executive branch discretion, it is entirely consistent with the separation of powers provision, which prohibits members of one branch of government from exercising the functions of a member of another branch. The legislative branch has simply exercised its constitutional prerogative to enact laws, and members of the executive branch must follow their constitutional duty to "take care that the laws are faithfully executed." Ind. Const. Art. V, § 16. There is nothing unusual or unconstitutional about a legislative mandate requiring the executive to take a specific action. *See, e.g.,* Ind.Code §§ 6–8.1–5–1(e) (requiring the Department of Revenue to issue a letter of findings within sixty days of a hearing on a tax protest); 11–10–5–1 (requiring the Department of Correction to implement academic and vocational education curricula and programs for committed offenders); 22–1–1–18 (requiring prosecuting attorneys or the Attorney General to prosecute violations of labor laws when requested by the commissioner of labor).

The Class cites cases that have found a violation of the separation of powers provision, but these cases are inapposite as they involve a legislative attempt to appoint members to executive branch boards or commissions, a distinctly executive function, *see Book,* 238 Ind. 120, 149 N.E.2d 273; *Tucker v. State,* 218 Ind. 614, 35 N.E.2d 270 (1941), or a judge ordering a state hospital to hire additional staff, a distinctly legislative function, *see Logansport State Hosp. v. W.S.,* 655 N.E.2d 588 (Ind.Ct.App.1995). Here, the General As-

sembly merely set a time period after which executive branch personnel are required to file a petition to terminate and bring the matter to a trial court for a determination of the child's best interests. This statute does not control or embarrass the executive branch and thus does not violate Article III, Section 1 of the Indiana Constitution.

### B. Infringement of the Judicial Branch

■ The Class also contends that the Indiana statute impermissibly treads upon the Indiana Supreme Court's "exclusive province" to regulate attorney conduct by requiring attorneys to violate the Rules of Professional Conduct. *See Matter of Mann,* 270 Ind. 358, 361, 385 N.E.2d 1139, 1141 (1979) (citing Ind. Const. Art. VII, § 4). As explained above, the Indiana law requires that, once a child has been placed outside the home for fifteen of twenty-two months, an attorney[3] file a petition to terminate parental rights. Language that existed before the 1998 law, and remains in the statute, requires all petitions to allege that termination is in the best interests of the child. *See* Ind.Code § 31–35–2–4(b)(2)(C). Thus, these statutory provisions contain directly conflicting language, requiring an attorney to allege the termination is in the child's best interest while also stating that a motion to dismiss will be forthcoming because the child's case plan has documented a compelling reason why termination is not in the child's best interest. Clearly, the statute is not a model of good draftsmanship and could easily be corrected by the General Assembly. Nonetheless, it does not require attorneys to violate the Rules of Professional Conduct.

■ The Class points to Rules 1.2(a), 2.1, 3.1, 3.3(a)(1), and 8.4(a). Considering each in turn, we note that filing a petition

---

**3.** The statute lists four possible persons who shall file the petition to terminate. Two of these must be attorneys: the attorney for the county office of family and children and the prosecuting attorney. *See* Ind.Code § 31–35–2–4 (Supp.1999).

to terminate that includes a statement that a motion to dismiss will be forthcoming does not force OFC attorneys to violate the wishes of their client under Rule 1.2(a) because their client is clearly interested in following the law and allowing a judge to determine the best interests of the child. The statute does not forbid an attorney from exercising "independent professional judgment" in violation of Rule 2.1 because it requires the attorney to bring forward grounds for dismissal when the attorney's professional judgment suggests that such grounds exist. Nor does the statute require an attorney to bring a "frivolous" action in violation of Rule 3.1. Rather, it requires the attorney to bring the issue to court for a judicial determination of the child's best interests, which is the furthest thing from a frivolous concern. The statute does not require attorneys to make false statements of material fact in violation of Rule 3.3(a)(1), because it requires the attorney to note in the petition any statutory grounds for dismissal, including that the child's best interests may be the continuation of parental rights. Finally, the statute does not require attorneys to violate Rule 8.4(a) for the same reasons explained above. The statute therefore does not require attorneys to violate the Rules of Professional Conduct or otherwise violate Article III, Section 1 of the Indiana Constitution.

### III. Federal Constitution

The Class also argues that the 1998 law violates their substantive due process and equal protection rights under the Fourteenth Amendment. Specifically, they contend that the Indiana statute violates their fundamental right to "family integrity." The United States Supreme Court has held that the Fourteenth Amendment protects those fundamental rights and liberties that are deeply rooted in our nation's history and tradition. *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). It "protects the sanctity of the family precisely because the institution of the family

is deeply rooted in this Nation's history and tradition." *Moore v. City of East Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *see also Fawcett v. Gooch*, 708 N.E.2d 908, 909–10 (Ind.Ct. App.1999).

The threshold question for a Fourteenth Amendment challenge concerns the level of scrutiny.

Those laws ... that burden the exercise of fundamental rights, like reproduction or expression, receive the strictest scrutiny. In order to survive strict scrutiny a state action must be a necessary means to a compelling governmental purpose and be narrowly tailored to that purpose. Statutes rarely survive this level of scrutiny.... Ordinary government activities must only satisfy a rational basis test, which requires merely that the law be "rationally related to a legitimate governmental purpose." Statutes rarely fail this test.

*Indiana Dep't of Envtl. Mgmt. v. Chemical Waste Mgmt., Inc.*, 643 N.E.2d 331, 337 (Ind.1994) (quoting *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988)).

■ The Class contends that the Indiana statute should be subjected to a "strict scrutiny" standard of review because actions to terminate the parent-child relationship implicate the fundamental right of family association. However, those governmental actions that merely touch on the family relationship in a slight or tangential manner do not require a strict scrutiny standard of review. In a case dealing with a different fundamental right, the United States Supreme Court observed:

By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with

decisions to enter into the marital relationship may legitimately be imposed. *Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *cf. N.B. v. Sybinski,* 724 N.E.2d 1103, 1109 (Ind.Ct. App.2000), *trans. denied* (finding that the family cap on AFDC benefits does not impinge on the fundamental right of association).

Here, the so-called "interference" is the requirement that parents, after their child has been placed out of the home for at least fifteen months during which they have appeared at a number of hearings on the issue, appear in court one more time within ninety days of the filing of the petition to terminate for a hearing to determine the best interests of the child. The 1998 statute merely sets a benchmark for additional involvement of the judicial process; termination can only occur after the statutory requirements are proven by clear and convincing evidence. Because the statute does not significantly interfere with a fundamental right, strict scrutiny is not the appropriate standard of review. *See Zablocki,* 434 U.S. at 386, 98 S.Ct. 673.

## A. Substantive Due Process

■■■ "[T]he Due Process Clause does not empower the judiciary to sit as a superlegislature to weigh the wisdom of legislation." *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978) (internal quotation marks and citations removed). The legislation must merely bear a rational relation to a legitimate governmental purpose. *Id.* at 125, 98 S.Ct. 2207. The Indiana statute seeks to facilitate adoptions, instead of endless foster care placements, for children placed outside their parental homes for an extended period of time. Accordingly, it sets a fifteen-month benchmark after which the judicial system becomes involved by the automatic filing of a petition to terminate parental rights. Although the filing of such a petition is certainly not a matter to be taken lightly, it does bear a rational relation to the State's

very legitimate interest in promoting adoptions of children who have been removed from their parental home for extended periods of time. The Indiana statute, with the protections outlined above, does not violate the Due Process Clause.

## B. Equal Protection

■■■ Finally, the Class contends that the Indiana statute violates the Equal Protection Clause of the Fourteenth Amendment. It argues that the Indiana statute impermissibly treats CHINS who have been placed outside the home for more than fifteen months differently from those placed outside the home for less than fifteen months. According to the Class, requiring the automatic filing of a petition to terminate parental rights after fifteen months denies the class members an individual determination based on whether termination is in the best interest of the child.

"The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government." 3 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 18.2, at 208 (3d ed.1999). The Indiana statute treats all CHINS placed out-of-home for fifteen of the past twenty-two months similarly and treats all CHINS placed out-of-home for a shorter period of time similarly. The Class essentially acknowledges this but attacks the disparate treatment between these two groups. However, the Equal Protection Clause "does not reject the government's ability to classify persons or 'draw lines' in the creation and application of laws, but it does guarantee that those classifications will not be based on impermissible criteria or arbitrarily used to burden a group of individuals." *Id.; see also Beanblossom v. State,* 637 N.E.2d 1345, 1347–48 (Ind.Ct.App.1994) (finding no equal protection violation in legislation that requires approval of the prosecuting attorney to modify a sentence more than 365 days after sentencing, despite authority of trial court to modify without prosecu-

torial approval when the petition is filed in fewer than 365 days).

The General Assembly's line drawing at fifteen months bears a rational relation to a legitimate state interest as explained in Part III.A., *supra*. It does not violate the Equal Protection Clause.

### Conclusion

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and NAJAM, J., concur.