867 N.E.2d 236 (2007)
In re The INVOLUNTARY TERMINATION OF the PARENT-CHILD RELATIONSHIP OF KAY.L., Kar.L., and S.G., Minor Children, and their Mother, Pamela Eden.
Pamela Eden, Appellant-Respondent,
v.
Johnson County Department of Child Services, Appellee-Petitioner.
No. 41A01-0610-JV-450.
Court of Appeals of Indiana.
May 31, 2007.
*237 John P. Wilson, Wilson, Green & Cecere, Greenwood, IN, Attorney for Appellant.
Dawn A. Wilson, Franklin, IN, Attorney for Appellee.

OPINION
BAKER, Chief Judge.
Appellant-respondent Pamela Eden argues that the trial court erroneously terminated the parental relationship of Eden and her three minor children, Kay.L., Kar. L., and S.G. Specifically, Eden argues that the petition to terminate her parental rights was invalid and that there is insufficient evidence supporting the termination. Finding no error, we affirm the judgment of the trial court.

*238 FACTS[1]
Eden is the mother of S.G., born September 12, 1992, Kay.L., born October 7, 1999, and Kar.L., born April 17, 2002.[2] On March 10, 2004, appellee-petitioner Johnson County Department of Child Services (DCS) removed Eden's children from her care and on March 12, 2004, DCS filed a petition alleging the children to be Children in Need of Services (CHINS) because of "neglect which included abandonment and life and health endangering environment, lack of supervision and poor hygiene." Tr. p. 40. In Eden's own words, the children were removed because "I left them at home and went out partying and I didn't come home." Id. at 22. On August 4, 2004, the three children were found to be CHINS. Eden failed to attend the hearing. As a result of the CHINS proceeding, Eden was given mental health, counseling, intensive outpatient, aftercare, and relapse prevention services.
At some point, Eden pleaded guilty to neglect of a dependent. On July 7, 2005, Eden was released from prison on probation. Following her release, Eden completed intensive outpatient treatment, got a job, remained gainfully employed for a period of time, and found a place to live. On January 19, 2006, DCS returned the children to Eden's care.
On April 17, 2006, DCS again removed the children from Eden's home for a number of reasons. During a number of supervised visits, a DCS representative had smelled alcohol on Eden's breath. On April 17, Eden tested positive for marijuana and cocaine. Additionally, she was not attending Alcoholics Anonymous meetings and was not taking her prescribed antide-pressants. Eden admitted to a caseworker that she had been using marijuana and drinking a six-pack of beer every other day. Furthermore, DCS believed that the children were not safe around Eden's boyfriend, whom DCS suspected of engaging in acts of domestic violence. One of the dispositional goals of the CHINS proceeding was for Eden to allow only authorized adults to care for the children. But Eden admitted to her counselor that she had been letting her boyfriend and a neighbor care for the children, neither of whom was authorized. Additionally, Eden had been leaving the younger two children in S.G.'s care and had asked the children to keep that secret and lie about if they were questioned on the issue.
After the children were removed from Eden's home the second time, a DCS caseworker became concerned about Eden's behavior during supervised visits with the children. In particular, Eden was apathetic and did not appear to care about the children's behavior. Eden left the direction of the girls to the DCS professionals who were present. The caseworker observed that Eden and her children did not appear to have a strong bond, testifying that after the girls were again removed from Eden's care, "they were too much for her to handle." Tr. p. 70.
On April 27, 2006, Eden's probation officer administered a drug test, which was *239 positive for marijuana use. The State revoked Eden's probation based on that drug test and on Eden's failure to report to the probation office. On April 28, 2006, DCS filed a petition to terminate Eden's parental rights with respect to all three children. At the time of the termination hearing on August 14, 2006, Eden was incarcerated following the revocation of her probation. Her scheduled release date is at the end of May 2007.
There is evidence in the record that Eden was still smoking marijuana in July 2006. Moreover, Eden was unemployed before she was incarcerated and was unable to support herself or her children. Eden has no specific plan for employment after she is released from prison, testifying that she will provide for herself "[b]y the grace of God." Id. at 20.
The trial court in the CHINS proceeding put a number of dispositional goals in place for Eden and her children. Over time, Eden has failed to meet a number of those goals. Among other things, she has failed to: resolve all pending criminal charges  she violated probation and was incarcerated as a result; refrain from using drugs and alcohol; get an Alcoholics Anonymous and Narcotics Anonymous sponsor and regularly attend meetings; follow the recommendations of a drug and alcohol counselor; have a clean and safe residence  she was incarcerated at the time of the termination hearing; and provide approved adult supervision for kids at all times.
At the hearing, all of the professionals involved with Eden and her family recommended that her parental rights be terminated. A DCS representative testified that there was a potential preadoptive home with Eden's half-sister, who lived in Texas.
Following the hearing, the trial court granted the petition to terminate Eden's parental rights, explaining that termination was in the children's best interests:
You happen to fall into a category that is much more difficult to handle because I am absolutely certain that you do not wish to have your mental health concerns and you don't wish to have your addictions. . . . I sympathize greatly with the perspective[, but]. . . . your addiction and mental health issues [have] caused [the kids] to be basically orphaned for the last three years but for [a] brief period[.] It is time for them . . . to be entitled to some sort of permanency.
Id. at 96-101. Eden now appeals.

DISCUSSION AND DECISION

I. Standard of Review
The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. But parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. In re D.D., 804 N.E.2d 258, 265 (Ind.Ct.App. 2004). Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities. Id.
When reviewing the termination of parental rights, we neither reweigh the evidence nor judge witness credibility, considering, instead, only the evidence and reasonable inferences that are most favorable to the judgment. We will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind.Ct.App.1997).

*240 II. Validity of the Petition

Eden challenges the validity of the petition to terminate her parental rights. Specifically, she argues that the petition failed to include all of the required information. Indiana Code section 31-35-2-4(b) states that the petition must
(2) allege that:
(A) one (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding under IC XX-XX-XX-X.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.
(3) Indicate whether at least one (1) of the factors listed in section 4.5(d)(1) through 4.5(d)(3) [IC XX-XX-X-X.5(d)(1) through IC XX-XX-X-X.5(d)(3)] of this chapter applies and specify each factor that would apply as the basis for filing a motion to dismiss the petition.
(Emphasis added).[3]
Eden challenges the validity of the petition because it did not include any references to the factors listed in Indiana Code section 31-35-2-4.5. For our purposes herein, the relevant portion of section 4.5 reads as follows:
(d) A party shall file a motion to dismiss the petition to terminate the parent-child relationship if any of the following circumstances apply:
(1) That the current case plan prepared by or under the supervision of the county office of family and children under IC 31-34-15 has documented a compelling reason, based on facts and circumstances stated in the petition or motion, for concluding that filing, or proceeding to a final determination of, a petition *241 to terminate the parent-child relationship is not in the best interests of the child. A compelling reason may include the fact that the child is being cared for by a custodian who is a parent, stepparent, grandparent, or responsible adult who is the child's sibling, aunt, or uncle or a relative who is caring for the child as a guardian.
I.C. § 31-35-2-4.5(d)(1) (emphasis added).
This court has had occasion in the past to analyze the applicability of section 4.5:
Section 4.5 applies when a petition to terminate has been filed because the trial court has determined that "reasonable efforts for family preservation or reunification with respect to a child in need of services are not required," or when a child in need of services has been placed in the home of a related individual, a licensed foster family home, child caring institution, or group home, and when the child has been so placed for not less than fifteen of the most recent twenty-two months.
Everhart v. Scott County Office of Family and Children, 779 N.E.2d 1225, 1229 (Ind. Ct.App.2002) (emphases in original). Here, the petition to terminate Eden's parental rights was based upon the following grounds:
i. The child[ren have] been removed from her parents for at least six (6) months under a dispositional decree;
ii. Reasonable efforts for family preservation or reunification would not be successful and are unnecessary;
iii. The child[ren have] been under the supervision of [DCS] for at least fifteen of the last twenty-two months.
Appellant's App. p. 47, 49, 51.
Initially, we note that one of the grounds on which the petition was based is independent of section 4.5  that the children had been removed from Eden's care for at least six months under the CHINS dispositional decree. Thus, even if DCS erroneously omitted a reference to the section 4.5 grounds for dismissal in the petition, the error was harmless, inasmuch as the petition could not have been dismissed pursuant to section 4.5 because of the remaining, independent ground for termination.
Furthermore, we observe that section 4.5 specifies that a compelling reason for dismissal of the petition "may include the fact that the child is being cared for by a" relative. I.C. § 31-35-2-4.5(d)(1) (emphasis added). Thus, the statute permits, but does not require, DCS to conclude that the placement of the children with a relative is a compelling reason to dismiss the petition. In this case, DCS exercised its statutory discretion and concluded that the children's placement with Eden's half-sister did not constitute a compelling reason to forego terminating Eden's parental rights. We cannot say that DCS abused its discretion in reaching that conclusion. Consequently, we find that the petition to terminate Eden's parental rights was valid.

III. Sufficiency of the Evidence
Eden next argues that there is insufficient evidence establishing that the conditions that resulted in the children's removal would not be remedied, that a continuation of the parent-child relationship posed a threat to the children's respective well-being, or that termination of Eden's parental rights was in the girls' best interests.
The termination statute requires DCS to prove that there is a reasonable probability that either the conditions that resulted in the child's removal will not be remedied, the reasons for placement outside the home will not be remedied, or the continuation of the parent-child relationship poses a threat to the well-being of the children. *242 I.C. § 31-35-2-4(b)(2). DCS need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change. Matter of Campbell, 534 N.E.2d 273, 275 (Ind.Ct. App.1989).
Here, the children were originally removed from Eden's care because of Eden's abandonment and lack of supervision, poor hygiene, and a life- and health-endangering environment. Following their removal, Eden failed to take part in the CHINS proceeding and did not pursue reunification, failing to keep in contact with DCS for a full year after the CHINS proceeding was instituted. At one point, Eden returned and seemed motivated to make the necessary changes to be reunited with her daughters. She took part in a number of services, including counseling, intensive outpatient therapy, aftercare and relapse prevention, and in-home case management. She got a job and remained employed for a period of time. Eventually, Eden was reunited with her children.
After three months, however, Eden tested positive for marijuana and cocaine and admitted to drinking a six-pack of beer every other day. She admitted that she left her children under the supervision of unauthorized adults, including her physically violent boyfriend, and at times left the girls alone with S.G. in charge, instructing them to lie and keep it a secret if anyone asked them about it. Thus, DCS again removed the children from her care. Eden's drug use led to the revocation of her probation and, at the time of the termination hearing, she was incarcerated. She has no plan for employment following her release from prison, testifying that she would take care of herself "[b]y the grace of God." Tr. p. 20.
Eden has failed to comply with a number of dispositional goals put in place during the CHINS proceeding. She has established that, while she may have a sincere desire to be reunited with her daughters, she has been unable to make choices that will keep her children safe. See In re J.W., 779 N.E.2d 954, 960 (Ind. Ct.App.2002) (holding that court must evaluate habitual patterns of conduct to determine whether there is a substantial probability of future neglect); Matter of Danforth, 542 N.E.2d 1330, 1331 (Ind. 1989) (holding that the trial court need not wait until the children are irreversibly impaired to terminate the parent-child relationship). Given this evidence, we find that DCS has established by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the children's removal will not be remedied and that the continuation of the parent-child relationship is a threat to their well-being. We also conclude that the trial court properly determined that termination of Eden's parental rights is in the best interests of the children.
The judgment of the trial court is affirmed.
FRIEDLANDER, J., and CRONE, J., concur.
NOTES
[1] Neither Eden nor the DCS include a Statement of Facts in their brief. Both parties include certain facts in their respective Statements of the Case, but neither provides a factual summary in narrative form. We direct counsel's attention to Indiana Appellate Rule 46(A)(6), which requires the inclusion of a Statement of Facts that is in narrative form and is not a witness-by-witness summary of the testimony. We admonish both attorneys and caution them to abide by the appellate rules in any future appellate briefs they may have occasion to file.
[2] Kay.L. and Kar.L. have the same father; S.G.'s father is a different individual. The parental rights of both men have been terminated.
[3] As a bit of historical background, we note that prior to 1998, whether to file a petition to terminate parental rights was within the DCS's discretion when a number of conditions were met. Phelps v. Sybinsky, 736 N.E.2d 809, 816 (Ind.Ct.App.2000). But in 1999, the legislature amended the existing termination statutes "by requiring the attorney for the county office of family and children or the prosecuting attorney to file a petition to terminate parental rights for a CHINS who has been removed from a parent and placed under the supervision of a county office of family and children for not less than fifteen of the most recent twenty-two months." Id. The statute further requires that the petition indicate whether one of the factors that would apply as the basis for filing a motion to dismiss exists. Id. If any ground for dismissal applies, the Indiana statute requires that the petition to terminate must indicate that a motion to dismiss is forthcoming. Id.