**In the Matter of the Termination of the Parent–Child Relationship of E.E.S., E.T.S. and J.S.S., Minor Children, and Melissa Plumm, Mother, and Brian Suns, Father.**

**Melissa Plumm, Appellant–Respondent,**

**v.**

**Bartholomew County Department of Child Services, Appellee–Petitioner.**

**No. 03A04–0703–JV–130.**

Court of Appeals of Indiana.

Sept. 28, 2007.

Rehearing Denied Dec. 10, 2007.

Daniel B. Schuetz, Witte & Schuetz, Columbus, IN, Attorney for Appellant.

Lisa A. Anderson, Bartholomew County Department of Child Services, Columbus, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Melissa Plumm appeals the termination of her parental rights to her three minor children, arguing her rights could not be terminated without allowing her an opportunity to engage in the case plan after being released from prison. In light of the unusual circumstances herein, we reverse.

### FACTS AND PROCEDURAL HISTORY

As relevant to Plumm, the court's order on initial hearing explained:

The parents stated that they received copies of the petitions and understood the allegation. The Court reviewed the legal rights and of [sic] the matters required by Indiana Code 31–34–10–4 and 5 and dispositional alternatives and the possibility of termination of parental rights with the parents and they indicated that they understood those rights and alternatives.

The Court referred to [sic] this matter to facilitation. At the conclusion, the facilitator reported that, *in exchange for the parents' admitting to the allegations contained in the petitions, the OFC agreed to maintain and support the family bond.* The OFC will arrange for telephone contact with the children for the mother while she is incarcerated.

And the Court, having informed those present of their legal rights and of the matters required by Indiana Code 31–34–10–4 and 5, having heard the evidence and being duly advised in the premises, finds:

1. [D.L.A.] born March 24, 1990; [E.E.S.] born January 2, 1992; [E.T.S.] born March 3, 1994; and [J.S.S.] born September 29, 1994 are minor children.

2. Brian L. Suns and Melissa K. Plumm, natural parents of said children, admit the allegations contained in said petitions.

3. [The children] are children in need of services and the petitions alleging children in need of services should be granted.

4. Case plans were filed herein by the Bartholomew County Office of Family and Children.

5. Copies of said case plans have been served on the natural parents of said children and they have had an opportunity to review said plans.

6. *Said natural parents understand said case plans and consent to the recommendations and terms contained therein.*

7. It is in the best interests of said children that they be made wards of the Bartholomew County Office of Family and Children and maintained by said Office in foster care.

8. The Bartholomew County Office of Family and Children should continue to provide services to the natural parents in an effort to correct the conditions and problems which led up to the filing of the petition herein; that said Office should provide reasonable opportunities for visitation by said child's natural parents.

9. The Bartholomew County Office of Family and Children has provided preplacement preventive services in that it has worked with the family over a period of time in a reasonable effort to keep this family united.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT as follows:

a. [The children] are children in need of services.

b. The case plans filed herein be and they are hereby approved.

c. Wardship of [the children] is hereby awarded to the Bartholomew County Office of Family and Children and said children shall be maintained by said Office in foster care.

d. The Bartholomew County Office of Family and Children shall continue to provide services to the natural parents in an effort to correct the conditions and problems which led up to the filing of the petition herein; that said Office shall provide reasonable opportunities for visitation by said children's natural parents.

e. Pursuant to the terms and conditions of the case plan, the mother, Melissa K. Plumm, is required to:

(1) Cooperate with Bartholomew County Office of Family and Children and its representatives;

(2) Actively participate in the development of the Case Plan;

(3) Maintain consistent contact with Family Case Manager and report any household changes;

(4) Adhere to and participate in the visitation plan;

(5) Demonstrate appropriate parenting skills during visits;

(6) Obtain and maintain adequate housing after release from incarceration;

(7) Obtain and maintain suitable employment or source of income after release from incarceration;

(8) Attend, participate in and successfully complete individual counseling after release from incarceration;

(9) Attend, participate in and successfully complete psychological evaluation after release from incarceration;

(10) Attend, participate in and successfully complete group-based parenting classes after release from incarceration;

(11) Attend, participate in and successfully complete visitation services;

(12) Abide by the laws of the State of Indiana and the United States of America so as not to jeopardize her ability to care for her children;

(13) Abide by all the terms and conditions established by the Bartholomew County Probation for you;

(14) [same text as number 12];

(15) [same text as number 13];

(16) Do not use any drugs or alcohol except to the extent prescribed by a licensed medical physician;

(17) Successfully complete substance abuse treatment evaluation and any recommended program;

(18) Successfully complete random substance abuse treatment screens;

(19) Successfully complete substance abuse treatment aftercare; and

(20) Refrain from associating with known drug users.

(Appellant's App. at 19–22) (emphases added).

On January 20, 2006, a petition to terminate parental rights was filed. A hearing was held in November 2006. On January 9, 2007, the court entered an order terminating parental rights, which provided the following statements pertinent to Plumm:

4. Melissa Plumm is the natural mother of [the children]. At the time of the Department's involvement, Melissa Plumm had legal custody of the children, although the children were living with Ms. Plumm's parents, Fred and Betty Ward. Ms. Plumm was incarcerated at that time and had been in jail since August, 2003.

5. It was established by clear and convincing evidence that the children have been under a dispositional decree as Children in Need of Services since November 16, 2004. It was further established by clear and convincing evidence that the children have been removed from the home for more than six months under a dispositional decree.

6. It was established by clear and convincing evidence that there is a reasonable probability that the conditions which led to the children's removal and reasons for placement outside the home of the parents will not be remedied, and that the continuation of the parent-child relationship poses a threat to the well-being of the children.

\* \* \* \* \*

9. Petitions alleging that the children were in need of services were filed on September 29, 2004. The initial hearing on the petition was held on November 29, 2004. Both Ms. Plumm and Mr. Suns admitted the allegations contained in the petitions at that time. The children were determined to be children in need of services on November 29, 2004. At the initial hearing, both parents were incarcerated.... Ms. Plumm was expected to be incarcerated for two to three years.

\* \* \* \* \*

11. A dispositional decree was entered on November 29, 2004[.] The dispositional decree required Melissa Plumm to cooperate with the Department, participate in development of case plans, maintain contact with the Department, participate in visits following her release from incarceration, demonstrate appropriate parenting skills during visits, obtain and maintain adequate housing and employment upon her release, submit to a psychological evaluation, abide by the laws of the State of Indiana, abide by the terms of probation, and not to use drugs or alcohol.

12. De Gamroth was the on-going family case manager for the Suns [sic] children. Ms. De Gamroth advised that Ms. Plumm was unable to participate in any services due to her incarceration. Ms Plumm has visited with the children during her incarceration. She has had telephone and sporadic written communication with the children. Ms. Plumm has not participated in any case plans, nor has she requested to be included.

\* \* \* \* \*

18. A review hearing was held on February 10, 2005.... At that time, Ms. Plumm was communicating with the children from prison by writing letters. The children were also having phone contact with their mother, once per month.....

19. A permanency hearing was held on July 28, 2005.... The court approved termination of parental rights as the permanency plan. Ms. Plumm was continuing to write letters to the children.

20. A status hearing was held on September 22, 2005. Neither Ms. Plumm nor Mr. Suns appeared for the hearing. At that time, the Court advised that future visitation with the mother would be at the children's election.

21. A review hearing was held on January 12, 2006. Neither Ms. Plumm nor Mr. Suns appeared for the hearing. Ms. Plumm was continuing to write to the children, however the children were not responding to her letters.

22. A status hearing was held on April 27, 2006. Neither Ms. Plumm nor Mr. Suns appeared....

23. A permanency hearing was held on July 7, 2006. Neither Ms. Plumm nor Mr. Suns appeared. De Gamroth advised that Ms. Plumm continued to write to the children, though not as often as she had been writing. The children had been to visit their mother at the prison on a few occasions.

\* \* \* \* \*

25. Crystal Nevins, [a visitation supervisor, reported] Ms. Plumm was appropriate during the visits, although she did have difficulty at times engaging the children.....

26. Dirk James is the Court Appointed Special Advocate for the children He also accompanied the children on two visits to see their mother.... Ms. Plumm was appropriate with the children during the visits, although she had difficulty engaging them at times....

\* \* \* \* \*

28. Melissa Plumm is not currently capable of caring for the children due to her incarceration. She has been incarcerated throughout the wardship and her projected release date is September, 2007. By Ms. Plumm's own admission, she has spent at least six years incarcerated by the Department of Corrections.

[sic] She has also spent additional time in county jails.

[Numerous findings explain the specifics of Ms. Plumm's criminal history prior to the determination her children were in need of services.]

39. Since being incarcerated in 2003, Ms. Plumm has lost good time credit for violating the prison's rules. She was caught smoking on at least one occasion. Her current release date is listed as September, 2007. Her release date has previously been listed at November, 2007 and March, 2008.

\* \* \* \* \*

41. Ms. Plumm would like the opportunity to be reunited with the children upon her release from prison. She indicated that she could return to live with her parents at that time, and could have the kids in the Wards' home. However, Ms. Plumm stated that she did not believe that her parents could care for the children on their own.

\* \* \* \* \*

42.[1] Termination of the parent-child relationship between [the children] and Melissa Plumm, their mother, is in the best interests of the children. The evidence established that Ms. Plumm had a significant criminal history, and as a result was not the primary caregiver for the children for significant periods in their life. Also, she included the children in her criminal activities on at least two occasions. Further, there was significant evidence presented that the children do not have a bond with Ms. Plumm, and have no real desire to even visit with Ms. Plumm. To allow Ms. Plumm the opportunity to complete her sentence then attempt to be reunited

---

1. Between the paragraphs provided here were three additional paragraphs numbered "42," "41," and "43," in that order. (Appellant's App. at 12.)

with the children does not allow them the permanency that they deserve. It will be at least ten months before Ms. Plumm is released from prison. The children have already been out of the home for over two years and to increase that time in the hope that Ms. Plumm would be able to establish a residence, gain employment and be able to care for the children is not in the children's best interest. Therefore, the continuation of the parent child relationship between Melissa Plumm and her children is not in the children's best interest.

(*Id.* at 5–13) (footnote added).

## DISCUSSION AND DECISION

■ Without delving into the specifics of the situation, we acknowledge the circumstances that led to the children's removal had not been remedied because Plumm is still incarcerated and her parents, the Wards, are still unable to provide a proper environment for these children. In addition, the facts in the record demonstrate the termination of Plumm's parental rights is in the best interest of her children. Therefore, this is a case in which we would typically affirm the termination of parental rights. *See, e.g., In re S.P.H.,* 806 N.E.2d 874, 883 (Ind.Ct.App.2004) ("needs of the children are too substantial to force them to wait" until father is released from prison and then tries to comply with requirements).

Nevertheless, we must reverse because the Bartholomew County Office of Family and Children ("BCOFC") failed to uphold

its end of the agreement it made with Plumm: "[I]n exchange for the parents' admitting to the allegations contained in the [CHINS] petitions, the OFC agreed to maintain and support the family bond." (Appellant's App. at 19.)

The court's order does not include how long the BCOFC would support the family bond, and neither party has directed us to a written agreement. But, other language in the court's order on the initial hearing indicates the commitment was to support the family bond until Plumm was released from prison and had an opportunity to engage in services. For example, the BCOFC was to "arrange for telephone contact with the children for the mother while she is incarcerated." (*Id.* at 19.) Many of the terms of the case plan, to which Plumm also consented, were not applicable until she was released from prison. Plumm might not have consented to the CHINS finding without a hearing, unless the BCOFC was offering to support reunification until Plumm was released from prison and had an opportunity to carry out the case plan.[2] Therefore, we conclude BCOFC agreed to support the family bond until Plumm was released from prison and had an opportunity to carry out the case plan.

The BCOFC argues it did not have to wait to terminate Plumm's rights because she delayed her release from prison by violating prison rules.[3] However, the termination order states her expected release date is September of 2007, which falls within the "two to three years" of incarcer-

---

2. Given the expectation that Plumm would be in prison for two to three years, any lawyer who handles CHINS cases should have understood that the CHINS finding was the only hurdle standing between the State and termination of Plumm's parental rights. While imprisoned, Plumm would almost certainly be unable to rectify the circumstances that led to the children's removal.

3. The case plan contains no prohibition against violating prison rules. Rather, the plan prohibits violation of terms of probation and laws of the State and the United States. (*See* Appellant's App. at 21.)

ation contemplated at the time of the initial hearing in November 2004. (*Id.* at 6.) The BCOFC has not demonstrated Plumm breached their agreement.

■ The BCOFC also argues it had no choice but to file the petition to terminate Plumm's parental rights in January of 2006 because the BCOFC is required to comply with the federal Adoption Assistance and Welfare Act. *See* Ind.Code § 31–35–2–4.5 (petition to terminate should be filed when child has been removed from a parent and under OFC supervision "not less than fifteen (15) months of the most recent twenty-two (22) months"); 42 U.S.C. § 675(5)(E) (federal law incorporated as I.C. § 31–35–2–4.5). The BCOFC cannot avoid its agreement with Plumm by feigning lack of control.

The BCOFC is presumed to have known about that statutory requirement when it entered into its agreement with Plumm, because the Indiana statute existed years before the agreement was formed. *See Phelps v. Sybinsky,* 736 N.E.2d 809, 818 (Ind.Ct.App.2000) (holding statute's fifteen month benchmark did not violate Due Process), *trans. denied.* Despite that requirement, the BCOFC chose to enter this agreement with Plumm—evidently without putting any time constraints on the agreement. The BCOFC cannot rely on any negative federal consequences as an excuse to invalidate its agreement with Plumm. Moreover, even if federal law required the BCOFC to file the petition to terminate parental rights, the BCOFC could have honored its agreement with Plumm by requesting a continuance of the termination proceedings until Plumm was released from prison.

The BCOFC agreed to support "the family bond" until Plumm was released from prison and had an opportunity to carry out the case plan requirements, and it violated that agreement by proceeding

with termination prior to her release from prison. We disapprove of this type of agreement, because it restricts the OFC from acting pursuant to the termination statutes or in the best interests of the children. Nevertheless, neither can we allow an OFC to ignore such an agreement when the parent's consideration for the agreement was, in essence, waiver of the right to due process at the CHINS proceeding. Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DARDEN, J., and CRONE, J., concur.