**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ADAM C. SQUILLER**
Squiller Law Office, P.C.
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**WENDY J. GENSCH**
DCS, Noble County Office
Albion, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

**FILED**

Apr 23 2012, 9:31 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF ) 
THE PARENT-CHILD RELATIONSHIP OF ) 
A.K., Minor Child, ) 
    ) 
F.C., Father, ) 
    ) 
    Appellant-Respondent, ) 
    ) 
    vs. )   No. 57A03-1108-JT-374 
    ) 
INDIANA DEPARTMENT OF CHILD ) 
SERVICES, ) 
    ) 
    Appellee-Petitioner. ) 

APPEAL FROM THE NOBLE SUPERIOR COURT
The Honorable Michael J. Kramer, Judge
Cause No. 57D02-1102-JT-3

**April 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

F.C. (Father) appeals the termination of his parental rights to A.K., and presents three issues:

1.  Whether the juvenile court abused its discretion when it denied his motion to dismiss the involuntary termination proceedings;

2.  Whether the juvenile court abused its discretion when it denied his motion for continuance; and

3.  Whether the juvenile court committed clear error when it determined there was a reasonable possibility the conditions that resulted in A.K.'s removal would not be remedied.

We affirm.

## FACTS AND PROCEDURAL HISTORY

A.K. was born to C.K. (Mother) on July 31, 2009.  On August 13, she was removed from Mother's care because A.K. tested positive for marijuana and cocaine.  On August 14, Mother admitted A.K. was a Child in Need of Services (CHINS) and A.K. was adjudicated as such.  The juvenile court returned A.K. to Mother's custody, provided Mother resided at Noble House.[1]  While Mother had custody, she took A.K. to visit the man Mother thought might be A.K.'s father (Father) and Father's grandmother.  In November 2009, Mother decided to move to Ohio to be closer to her family.  The court removed A.K. from Mother's custody and placed her in foster care.

---

[1] The record does not make clear what type of facility Noble House is.

2

Father testified he believed A.K. was his child, but claimed he "didn't really have an address to write" and "was sleeping" when the DCS case manager returned Father's call regarding establishment of A.K.'s paternity. (Tr. at 67.) On April 22, 2010, Father pled guilty to Class D felony possession of methamphetamine, and the trial court pronounced an eighteen-month sentence on September 30. In October 2010, the juvenile court ordered Father to establish paternity of A.K. On January 19, 2011, the court determined Father was A.K.'s father.

On February 17, 2011, DCS filed a motion to involuntarily terminate Father's parental rights to A.K.[2] On July 7, the day before the hearing on termination, Father filed a motion to dismiss DCS's petition and to continue the proceedings. The juvenile court denied both motions the next day. During the termination hearing, Father, A.K.'s foster parents, the Court Appointed Special Advocate (CASA), and the DCS case manager all testified Father did not communicate with A.K. after his incarceration and establishment of paternity. On July 11, 2011, the court issued an order terminating Father's rights to A.K.

## DISCUSSION AND DECISION

1. <u>Motion to Dismiss</u>

The day before the termination hearing, Father filed a motion to dismiss DCS's petition to involuntarily terminate his rights to A.K. because "services were not provided to the natural father under the case plan, and said services are substantial and material to

---

[2] Mother voluntarily relinquished her parental rights and consented to the adoption of A.K. by the foster parents.

3

implement safe return of the child to the child's home." (App. at 26.) The judge denied the motion, stating, "I guess considering that I, I guess at this point I'm going to deny it[.] I think it really depends on the evidence." (Tr. at 3.) Father argues the juvenile court erred in denying his motion to dismiss because it did not hear evidence regarding the assertions made in the motion to dismiss, and had evidence been heard, the motion to dismiss would have been granted. We disagree.

DCS is not required to offer reunification services or visitation while a parent is incarcerated. *See Rowlett v. Vanderburgh County OFC*, 841 N.E.2d 615, 622 (Ind. Ct. App. 2006) ("[T]he OFC did not, nor was it required to, provide Father with services directed at reuniting him with his children."), *trans. denied*; *see also In re H.L.*, 915 N.E.2d 145, 148 (Ind. Ct. App. 2009) (absence of services due to Father's incarceration, not lack of action of DCS). Therefore, the juvenile court did not need to consider evidence Father was not provided services. As we assume the court knows and properly applies the law, *Boone County REMC v. Layton*, 664 N.E.2d 735, 739 (Ind. Ct. App. 1996), *trans. denied*, we cannot hold the juvenile court erred when it denied Father's motion to dismiss.

2.      Motion to Continue

In his motion to dismiss, Father proposed, in the event the juvenile court denied his motion to dismiss, it instead "continue the Termination Dispositional Hearing to a time when the natural father will be released from incarceration and have a chance to become

4

established in the community and to participate in reunification services." (App. at 26.) The judge denied the motion due to "statutory timelines."[3] (Tr. at 4.)

The decision to grant or deny a continuance rests within the sound discretion of the juvenile court. *Rowlett*, 841 N.E.2d at 619. We will reverse the court's decision only for an abuse of that discretion. *Id.* An abuse of discretion occurs when the party requesting the motion for continuance has shown good cause for granting the motion and the juvenile court denies it. *Id.* No abuse of discretion will be found when the moving party is not prejudiced by the denial of its motion. *Id.*

Father argues the facts of his situation are similar to those in *Rowlett*, where the trial court abused its discretion when it denied Rowlett's motion to continue termination proceedings involving his two children. We disagree. Unlike Father, who did not establish paternity or a relationship with his child prior to his incarceration, Rowlett took affirmative steps to establish paternity and visit his children prior to his incarceration. Additionally, Rowlett was due to be released six weeks after the scheduled termination hearing, while Father's earliest possible release date was eight months after the termination hearing.[4]

In addition to those facts, Father testified he would need hip replacement surgery after release from prison. Thus, he could not speculate when he would recover sufficiently from surgery to parent A.K. We hold the juvenile court did not abuse its discretion when it denied

---

[3] Although the trial court provided no further explanation, we presume it was referring to the Adoption Assistance and Welfare Act, the purpose of which is to "ensure that children [do] not spend long periods of their childhoods in foster care or other settings designed to be temporary." *Phelps v. Sybinsky*, 736 N.E.2d 809, 813 (Ind. Ct. App. 2000). Further prolonging the termination process would frustrate that goal.

[4] Father had a chance to reduce his time incarcerated by four months on completion of the CLIFF program.

Father's motion to continue the termination proceedings. *See, e.g., C.T. v. Marion County DCS*, 896 N.E.2d 571, 587 (Ind. Ct. App. 2008) (appellate court affirmed denial of Brown's motion for continuance in part because Brown was not due to be released from prison for at least four months), *trans. denied*.

3.      Involuntary Termination of Parental Rights

We review termination of parental rights with great deference. *In re K.S., D.S., and B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is

6

protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

To terminate a parent-child relationship, the State must allege and prove:

(A)    that one (1) of the following is true:
    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.
    (ii)   A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
    (iii)  The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
(B)    that one (1) of the following is true:
    (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
    (ii)   There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
    (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;
(C)    that termination is in the best interests of the child; and
(D)    that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

On appeal, Father argues the State did not prove there was a "reasonable probability that the conditions which resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied" as required by Ind. Code § 31-35-2-4(b)(2)(B)(i).

In terminating Father's parental rights, the juvenile court found:

A.   There is a reasonable probability that the conditions that resulted in the children's [sic] removal and reasons for the placement outside the child's home will not be remedied because [Father] made minimal effort to remedy the reason for the removal of the child.

* * *

C.   [Father] cannot care for or support the child because of his incarceration.
D.   [Father] has continued to use illegal drugs after the date that he claims to have stopped.
E.   [Father] made no attempt to establish paternity or to care for or support the child prior to his incarceration.
F.   Currently, [Father] will be incarcerated for an additional eight (8) months. After his release, [Father] will undergo surgery and will be unable to care for the child for some time period after his release.
G.   Any time within which the ability of [Father] to establish a stable and appropriate life can be verified will be relatively long term as opposed to the facts in *In re J.M.*, 908 N.E.2d 191 (Ind. 2009).

(App. at 5.) Father claims findings A and E are not supported by the evidence. We disagree.

A.   Reasonable Probability Conditions would not be Remedied

Father likens his case to in *In re J.M.*, 908 N.E.2d 191, 194 (Ind. 2009), in which our

8

Indiana Supreme Court found the State did not prove, among other things, the conditions that resulted in J.M.'s removal would not be remedied. *J.M.* is distinguishable.

In *J.M.*, the parents had an ongoing relationship with J.M. for three years before they were incarcerated. In the instant case, Father testified he visited A.K. when she was an infant, but had not communicated with her since establishing paternity.

In *J.M.*, both parents completed multiple court-ordered self-improvement courses while incarcerated, J.M.'s mother was on course to complete her bachelor's degree, and J.M.'s father testified he had employment and transportation on his release. Here, by contrast, Father testified he was on step four of eight of the CLIFF substance abuse recovery program, but he could not identify the program goals he had completed. He testified he had registered for a parenting class, but there is no indication he completed it. He testified he would need hip replacement surgery on his release, and was unclear how long his recovery would last. In light of these distinctions, *J.M.* does not control.[5]

The State presented evidence Father had a history of substance abuse, did not have stable housing, had health problems including the need for a hip replacement, and did not have a relationship with A.K. We acknowledge Father's arguments he could care for A.K. following his release, but we may not reweigh the evidence. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh the evidence presented at juvenile court level).[6]

---

[5] Father also argues *In re G.Y.*, 904 N.E.2d 1257 (Ind. 2009), *reh'g denied*, applies. G.Y.'s mother was his primary caregiver for the first twenty months of his life, and the two had a strong bond. Such is not the case with Father and A.K.. Father had not communicated with A.K. for almost a year between his incarceration and the termination hearing, and had seen A.K. only a few times prior to his incarceration.

[6] Father claims the juvenile court's finding he "made no attempt to establish paternity or to care for or support the child prior to his incarceration," (App. at 5), is not supported by the evidence. The finding does not affect

**CONCLUSION**

The trial court did not err when it denied Father's motion to dismiss because the grounds upon which his motion were premised do not apply to Father. The trial court did not abuse its discretion when it denied Father's motion to continue because further delay in the proceedings would frustrate the goal of permanency for A.K. The State presented clear and convincing evidence the conditions that resulted in A.K.'s removal would not be remedied. Accordingly, we affirm the termination of Father's parental rights to A.K.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.

---

the factors considered when deciding whether to terminate Father's rights to A.K., and therefore is surplusage. Hence, even if the finding was erroneous, it does not warrant reversal. *See Lasater v. Lasater*, 809 N.E.380, 398 (Ind. Ct. App. 2004) ("Findings, even if erroneous, do not warrant reversal if they amount to mere surplusage and add nothing to the trial court's decision").