## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 11 2016, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew E. Grossnickle
Green, Grossnickle & Flecker, LLP
Syracuse, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of: <br><br> H.W. (Minor Child) <br> and <br> S.L. (Mother), <br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br> *Appellee-Petitioner.* | April 11, 2016 <br><br> Court of Appeals Case No. 92A03-1510-JT-1684 <br><br> Appeal from the Whitley Circuit Court <br><br> The Honorable James R. Heuer, Judge <br><br> Trial Court Cause No. 92C01-1503-JT-14 |

**Bradford, Judge.**

# Case Summary

Appellant-Respondent S.L. ("Mother") is the mother of minor child H.W. ("the Child"). Appellee-Petitioner the Indiana Department of Child Services ("DCS") received allegations that Mother was using drugs in the presence of the Child and the Child was determined to be a child in need of services ("CHINS"). Mother failed to comply with the trial court's subsequent dispositional orders and DCS filed a petition to terminate the parent-child relationship. After conducting a hearing on the petition, the trial court terminated Mother's parental rights over the Child. Mother appeals, arguing that there is insufficient evidence supporting the trial court's termination order. Concluding otherwise, we affirm.

# Facts and Procedural History

On March 30, 2015, DCS filed a petition for involuntary termination of the parent-child relationship. On July 7, 2015, the trial court held a fact-finding hearing in relation to DCS's petition. On September 16, 2015, the trial court issued an order terminating the parent-child relationship. The trial court's order contained the following undisputed findings of fact:

> 3. On June 3, 2009, the child, [H.W.] (hereinafter "Child"), was born.
>
> …

6. On or about July 8, 2013, Child and the parents [M.W.] (hereinafter "Father") and [S.L.] (hereinafter "Mother") became involved with DCS when DCS investigated a report that Child was a Child In Need of Services. More specifically, the facts are that the mother was using drugs in the presence of the children. An Informal Adjustment was entered into. On or about October 29, 2013, DCS filed its Petition alleging that Child was a Child in Need of Services (CHINS).

7. On November 12, 2013, the Court entered its Order on Child in Need of Services after mother admitted the allegations of the petition alleged under Indiana Code 31-34-1-1, adjudicating Child to be a CHINS.

…

9. On December 9, 2013, the Court entered its Dispositional Order, in which Child was formally removed from the parents, DCS was granted wardship of Child. The Dispositional Order contained the following provisions regarding mother: Mother shall begin supervised visitation with the child after passing three drug screens and beginning services with the Bowen Center; Mother shall complete a substance abuse assessment, parenting assessment, and a psychological assessment and follow all recommendations; Obtain secure employment; Obtain stable housing; Submit to random drug screens within one hour of request. Failure to submit to the drug screen will result in a failed test; Notify the Department of Child Services of any change in address, phone number, or employment within 48 hours of the change; Inform the Department of Child Services of any contact with law enforcement within 48 hours after contact. (State '5 Exhibit B). The permanency plan at that time was for reunification.

10. After formal removal of Child per the Dispositional Decree of December 9, 2013, Child was never returned to parents' care and custody.

11. Throughout most of the case, Mother put her desires before Child's needs; The child was removed October 28, 2013 after

Mother admitted to not complying with the Informal Adjustment, testing positive for marijuana, not participating in services, and not staying in contact with DCS.

12. Mother was unable to sustain consistent and suitable housing for any length of time throughout the pendency of the underlying CHINS case, the longest approximately three-four months at the Charis House (a homeless shelter), the majority of the places Mother lived were not her own, thereby demonstrating a lack of stability.

13. Mother admitted being removed from Charis House as a result of her failure to turn in her narcotic medication.

14. In January 2015 mother moved to a one bedroom home in Camby, Indiana two and one-half hours from where the Child is placed.

15. Mother's employment has been sporadic throughout the underlying CHINS case. Mother is presently employ[ed] part-time, obtaining this employment well after DCS had filed the Verified Petition for Involuntary Termination.

16. Mother's visitation was very inconsistent with the child. Mother's visitation was suspended the majority of the time throughout the pendency of the underlying CHINS case due to her inability to consistently submit clean drug screens.

17. Mother was allowed telephone visitation and even those were inconsistent and inappropriate promises were made during the phone visits causing the child trauma. Telephone visits were suspended on February 26, 2015 due to concerns these visits were detrimental to the child.

…

19. …Mother did not complete the parenting assessment. Mother did not complete the psychological assessment. Mother was to complete a 16 week substance abuse treatment, this took mother over 52 weeks to finally complete.

20. Mother was provided Home Based Rehabilitation Services (RSP) to assist in obtaining employment and suitable housing for

herself and Child but she could not maintain consistent employment or housing.

21. Throughout the underlying CHINS case, Mother did not demonstrate that she was ready and able to parent Child: Mother was resistant to services, failed to complete services, and failed to demonstrate an ability to benefit from services she had received and continued to test positive for illicit drugs; when mother could be located to be tested.

22. Mother did not stay in contact with DCS.

23. Mother's last contact with DCS was January of 2015.

24. Mother's failure to remedy the reasons for placement outside the home of her home and her display of habitual patterns of conduct during the underlying CHINS case demonstrates a probability of future neglect or deprivation of the child.

25. Based on Mother's lack of progress and commitment to improve her ability to provide a drug free, stable, consistent, and nurturing home for the Child and the Child's need for stability, DCS Family Case Manager, Lauren Zylla-Whetstone, testified that the reasons for placement outside the home of the parents will not be remedied and the Department's recommendation of termination of parental rights and adoption are a satisfactory plan for care and treatment of the child.

26. The CASA Representative, Lisa O'Dell testified that adoption and termination of parental rights was in the Child's best interests. CASA testified that due to the length of the underlying CHINS case, the inconsistency of the mother, the missing of visitations by mother causing the Child issues, it is in the best interest of the Child to terminate parental rights because mother was unable to offer the child what the child needs.

Mother's App. pp. 10-13. Mother appeals the trial court's order terminating her parental rights.

# Discussion and Decision

[3] The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his or her child. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied.* Therefore, parental rights are not absolute and must be subordinated to the child's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

[4] The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id.* Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.* The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

[5] Mother contends that the evidence presented at the evidentiary hearing was insufficient to support the trial court's order terminating her parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination*

*of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the trial court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

In deference to the trial court's unique position to assess the evidence, we set aside the trial court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the trial court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

> (A) one (1) of the following exists:
>
>> (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
>>
>> (ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2011). Mother does not dispute that DCS presented sufficient evidence to support the first and fourth elements set forth in Indiana Code section 31-35-2-4(b)(2).

[8] Mother argues that DCS failed to establish by clear and convincing evidence that the conditions resulting in the Child's removal from and continued placement outside her care will not be remedied. Mother also argues that DCS failed to establish by clear and convincing evidence that the continuation of the

parent-child relationship poses a threat to the Child.[1]  However, it is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court need only find *either* that the conditions resulting in removal from or continued placement outside the parent's home will not be remedied *or* that the continuation of the parent-child relationship poses a threat to the child.  *In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where, as here, the trial court concludes that there is a reasonable probability that the conditions which resulted in the removal of the child from or the reasons for the continued placement of the child outside of the parent's care would not be remedied, and there is sufficient evidence in the record supporting the trial court's conclusion, it is not necessary for DCS to prove that the continuation of the parent-child relationship poses a threat to the child.  *In re S.P.H.*, 806 N.E.2d at 882.

[9]    In order to determine whether the conditions will be remedied, the trial court should first determine what conditions led DCS to place the child outside of parent's care or to continue the child's placement outside parent's care, and, second, whether there is a reasonable probability that those conditions will be remedied.  *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*; *In*

---

[1] Mother also argues that termination is not in the Child's best interest.  However, Mother did not offer any argument as to why termination is not in the Child's best interest.  Accordingly, Mother has waived this argument for our review.  *See* Ind. App. Rule 46(A)(8); *See In re A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 at n.4 (Ind. Ct. App. 2013) (where parent fails to raise specific, cogent argument challenging trial court's conclusions concerning certain elements of Ind. Code § 31-35-2-4, those challenges are waived on appeal).

*re S.P.H.*, 806 N.E.2d at 882.  When assessing whether a reasonable probability exists that the conditions justifying a child's removal or continued placement outside his parent's care will not be remedied, the trial court must judge the parent's fitness to care for the child at the time of the termination hearing, taking into consideration evidence of changed conditions.  *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997).  The trial court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation.  *Id.*

[10]  A trial court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing.  *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).  Moreover, a trial court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'"  *Id.* (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)).  The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change."  *In re Involuntary Termination of Parent-Child Relationship of Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[11]  Here, the Child was initially removed from Mother's care due to Mother's use of illegal drugs in the presence of the Child.  Prior to removing the Child, DCS attempted to work with Mother to resolve her drug use issues by reaching an informal adjustment agreement ("IA") with Mother.  Mother violated the IA by

failing a drug screen and failing to enroll in required services. In the two years leading up to the termination proceeding, Mother continued to engage in a pattern of negative behavior and failed to make significant positive improvements. Mother failed to comply with the trial court's orders, including participating in a psychological or parenting assessment, maintaining contact with DCS, and timely completing a substance abuse program. Mother failed several drug screens, causing her visitation privileges with Child to be suspended. Mother failed to maintain stable housing, often stayed with friends and family, and stayed in a homeless shelter for several months. In January of 2015, six months prior to the termination hearing, Mother moved to Camby, approximately two-and-one-half hours from where the Child was placed, and discontinued her participation in all services offered by DCS.

[12] Family Case Manager ("FCM") Beau Norris testified that Mother was noncompliant with services. Specifically, FCM Norris stated that Mother was inconsistent with visitation and "in January 2015, she missed every single appointment for her substance abuse." Tr. p. 40. FCM Norris also described Mother's phone calls with the Child as having a negative impact on the Child. FCM Lauren Zylla-Whetstone testified that Mother did not complete required services, maintain contact with DCS, or communicate updated contact information to DCS, which prevented FCM Zylla-Whetstone from being able to request drug screens from Mother. FCM Zylla-Whetstone recommended that Mother's parental rights be terminated due to her inability to provide a stable, consistent home life for the Child. FCM Zylla-Whetsone also noted that

Mother never attempted to contact her to resume visits or phone calls with the Child. The court-appointed special advocate Lisa O'Dell also recommended termination of Mother's parental rights based on similar concerns with Mother's inconsistent participation in services and visitation, the length of the case, and the Child's need for stability and permanency.

[13] The Child was placed in foster care with Stacey Disinger for the seventeen months preceding the termination hearing. Disinger testified that the Child had significant behavioral issues when she was first placed with Disinger, and that the Child had matured greatly since that time. Disinger also testified that the weekly phone conversations between the Child and her Mother were traumatic and detrimental for the Child, and that the Child would relapse into her earlier destructive behavior following these conversations.

[14] In response to the evidence supporting termination, Mother generally argues that "the trial court failed to give sufficient weight to the efforts made by mother to achieve reunification." Mother's Br. p. 6. Specifically, Mother argues that at the time of the termination hearing, she had secured housing, "was free of drugs," and "arguably, in the best position she had been since the inception of the CHINS case to care for and provide for the Child." Mother's Br. p. 7, 8. First, we note that Mother's arguments amount to no more than a request for this court to reweigh the evidence, which we will not do. *In re S.P.H.*, 806 N.E.2d at 879. Furthermore, despite Mother's claims of improvement, at the time of termination hearing, Mother had still not completed psychological or parenting assessments and had not participated in any services for

approximately six months. Finally, we note that, according to FCM Zylla-Whetstone, Mother made herself unavailable for drug testing by moving to Camby. Therefore, Mother's claims of being drug-free at the termination hearing were self-serving and the trial court, as the finder of fact, was under no obligation to credit them. *See Wood v. State*, 999 N.E.2d 1054, 1064 (Ind. Ct. App. 2013) (noting that the trier of fact is not required to believe a witness's testimony even when it is uncontradicted). The trial court's order terminating Mother's parental rights is not clearly erroneous.

[15] The judgment of the trial court is affirmed.


Bailey, J., and Altice, J., concur.