## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 13 2017, 6:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT N.B.

Christopher L. Clerc
Columbus, Indiana

ATTORNEY FOR APPELLANT J.H.

Michael P. DeArmitt
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Matter of the Termination of the Parent-Child Relationship of L.H. (Minor Child)

and

N.B. (Mother) and J.H. (Father),
*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

December 13, 2017

Court of Appeals Case No. 03A01-1707-JT-1598

Appeal from the Bartholomew Circuit Court

The Honorable Doug E. Van Winkle, Senior Judge

Trial Court Cause No. 03C01-1608-JT-4335

**Bradford, Judge.**

# Case Summary

[1] Both Appellant-Respondent J.H. ("Father") and Appellant-Respondent N.B. ("Mother") (collectively, "Parents") appeal the juvenile court's order terminating their parental rights to L.H. (the "Child"). The Child was removed from Parents care after Appellee-Petitioner the Indiana Department of Child Services ("DCS") received numerous reports alleging drug use by and domestic violence between Parents. The Child was subsequently determined to be a child in need of services ("CHINS") and Parents were ordered to complete certain services. Parents, however, failed to successfully complete the court-ordered services.

[2] DCS filed a petition seeking the termination of Parents' parental rights to the Child on August 5, 2016. Following an evidentiary hearing, the juvenile court issued an order granting DCS's petition. On appeal, Parents contend that DCS did not provide sufficient evidence to support the termination of their parental rights. We affirm.

# Facts and Procedural History

[3] Father and Mother are the parents of the Child who was born on April 9, 2009. DCS became involved with the Child in May of 2015 after receiving reports of drug use by and domestic abuse between Father, Mother, and Mother's boyfriend. The Child was not removed from Parents' care following this initial

report, but was later removed after DCS received additional reports and a DCS case worker observed signs of drug use by and domestic violence between the parties. On August 6, 2015, the Child was found to be a CHINS. As a result of the CHINS finding, Parents were ordered to complete a number of services. Parents failed to successfully complete these court-ordered services.

[4] On August 5, 2016, DCS filed a petition seeking the termination of Parents' parental rights to the Child. The juvenile court conducted a two-day evidentiary hearing on DCS's petition on March 31 and May 19, 2017.

[5] During the evidentiary hearing, DCS presented evidence indicating that both Father and Mother continued to struggle with sobriety, neither had obtained what DCS considered to be appropriate housing, Father had not seen the Child since July of 2016, and Mother had not seen the Child since November of 2016. DCS also presented evidence that neither Father nor Mother had made significant progress towards reunification, the Child was currently placed in a "very secure, very stable" home environment, the termination of Parents' parental rights was in the Child's best interest, and DCS's plan was for the Child's current pre-adoptive family to adopt the Child. Tr. Vol. II, p. 45.

[6] Following the conclusion of the hearing, the juvenile court took the matter under advisement. On June 17, 2017, the juvenile court issued an order terminating Parents' parental rights to the Child. This appeal follows.

# Discussion and Decision

[7] On appeal, Parents challenge the juvenile court's order terminating their parental rights to the Child. The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his or her child. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id*. However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his or her responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the child's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id*.

[8] The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id*. Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id*. The juvenile court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id*.

[9] Parents contend that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating their parental rights to the Child. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct.

App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*. Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*.

[10] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id*.

[11] In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

(A) that one (1) of the following is true:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree.
(ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
(iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at

least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)  that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)  termination is in the best interests of the child; and

(D)  there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[12]  Neither Father nor Mother disputes that DCS presented sufficient evidence to support the first, third, and fourth elements set forth in Indiana Code section 31-35-2-4(b)(2). Each separately claims, however, that DCS failed to establish the second element that is required to be proven before a court can order the involuntary termination of a parent's parental rights.

## Whether Conditions Will Be Remedied

[13]  On appeal, Parents separately argue that DCS failed to establish by clear and convincing evidence both that the conditions leading to the Child's removal from their respective homes would not be remedied and that there is a

reasonable probability that the continuation of the parent-child poses a threat to the well-being of the Child.

[14] It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find either that (1) the conditions resulting in removal from or continued placement outside the parent's home will not be remedied, (2) the continuation of the parent-child relationship poses a threat to the child, or (3) the child has been adjudicated CHINS on two separate occasions. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where the juvenile court determines one of the above-mentioned factors has been proven and there is sufficient evidence in the record supporting the juvenile court's determination, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other two factors listed in Indiana Code section 31-34-2-4(b)(2)(B). *See generally In re S.P.H.*, 806 N.E.2d at 882 (providing that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS need only prove and the juvenile court need only find that one of the factors listed in that sub-section is true).

[15] In order to determine whether the conditions will be remedied, the juvenile court should first determine what conditions led DCS to place the Child outside of her parent's care or to continue the Child's placement outside parent's care, and, second, whether there is a reasonable probability that those conditions will be remedied. *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*; *In re S.P.H.*, 806 N.E.2d at 882. When assessing whether a reasonable probability exists that the conditions justifying the child's removal or continued

placement outside their parent's care will not be remedied, the juvenile court must judge the parent's fitness to care for the child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The juvenile court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* A juvenile court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *Id.* (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)). The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Involuntary Termination of Parent-Child Relationship of Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[16] Here, the Child was removed from Parents' care after DCS received numerous reports of drug abuse by and domestic violence between Father, Mother, and Mother's boyfriend. The investigating DCS case worker was able to substantiate the reports of drug use by and domestic abuse between the parties. The DCS case worker also observed that Parents lacked stable housing. In connection to the underlying CHINS determination,

20.     On August 31, 2015, Mother admitted that a domestic violence altercation occurred in early June 2015 while the child was present in the home. Mother also admitted that she had not submitted to a requested drug screen.

21.     On August 31, 2015, Father admitted that he has struggled with substance use in the last couple of months, specifically methamphetamine. Father further admitted that his drug use impacted his ability to parent.

22.     On September 1, 2015, the Bartholomew County Juvenile Court held a Dispositional Hearing as to parents, order file-stamped January 25, 2016. Mother was ordered to participate in home based-therapy [sic] to address her substance use and domestic violence relationships, complete a substance use assessment and successfully complete any recommended treatment, and random drug screens.

23.     At the same hearing Father was ordered to participate in home based-therapy [sic] to address his substance use and past trauma, complete a substance use assessment and successfully complete any recommended treatment, which included detox, inpatient and recovery coach services, Fatherhood Engagement to address parenting skills, housing and employment, and random screens.

Appellant N.B.'s App. Vol. II, pp. 62–63.

[17]    The juvenile court determined that DCS presented sufficient evidence to prove that it was unlikely that the reasons for the Child's removal from and continued placement outside Parents' care would be remedied, and upon review, we conclude that the juvenile court's determination to this effect is supported by the record. In support of its determination, the juvenile court found as follows:

24.     [Family Case Manager ("FCM")] Stacy Williams received the case in January 2016.

25.     FCM Williams resubmitted Mother's referrals for

substance abuse assessment, individual therapy, and a psychological evaluation as these services had expired due to Mother not participating.

26. At the time FCM Williams obtained the case, Mother was homeless and staying with friends.

27. In January 2016, Mother was participating regularly with her random screens, which were all positive except for one negative in May 2016.

28. According to FCM Williams, Mother testified that she did not have issues with substance abuse.

29. Mother completed a substance abuse evaluation which recommended that Mother participate in [an Intensive Outpatient Program ("IOP")], random screens, and individual therapy.

30. Mother did not engage in individual therapy and refused to participate in IOP.

31. During the period FCM Williams had the case, Mother was incarcerated once for 5 to 7 days.

32. FCM Williams stated that Mother participated in supervised visits with the Child and was appropriate. Mother was consistent but did miss some visits.

33. FCM Williams testified that Mother never had stable housing or stable employment during the five months that she held the case.

34. FCM Williams testified that when she obtained the case Father was inconsistent with drug screening.

35. FCM Williams testified that Father spent 21 days at Tara Treatment for inpatient treatment.

36. FCM Williams testified that after Father was released from Tara, Father was very proactive. He continued his supervised visits and was looking for employment and housing. However, in the end of April 2016, Father was very inconsistent with his services and contact with the department. Father was never able to find stable housing and never engaged in Father's Engagement.

37. In May 2016, FCM Annette Carnes obtained the case from FCM Williams.

38. FCM Carnes testified that when she got the case she had a hard time contacting Father. When she did speak to Father, Father would say that he would promise to talk to her or come to the office which he never did. FCM Carnes stated the first time she met Father was at a supervised visit for Mother, where Father showed up unannounced attempting to have a visit with the Child. FCM Carnes was able to screen Father which came back positive for illegal substances.

39. In July 2016, Father's visits were suspended due to not visiting with the child and the positive screen.

40. FCM Carnes testified that Mother has had 17 referrals expire due to not engaging and 12 open referrals. Mother had not engaged in individual therapy or completed the psychological evaluation. Mother's referral for home based case management.[1]

41. In September 2016, Mother went to inpatient treatment at Tara shortly after [DCS] filed [its] Verified Petition to Terminate Parental Rights. When she was released in October 2016, Mother had a negative screen.

42. In November 2016, Mother tested positive for methamphetamine.

43. In November 2016, Mother informed the team that she was pregnant.

44. FCM Carnes testified that Mother then went eight weeks without visiting her child. With the concern of her usage, and not seeing the child, Mother's visits were suspended until Mother could produce consistent clean screens.

45. In October 2016, Father was incarcerated. Father was incarcerated from February 2016 through early January 2017. Father was again incarcerated in February 2017 through March 2017.

46. FCM Carnes testified that Father had informed her that he was attending IOP through Centerstone during the weeks

---

[1] This incomplete sentence appears verbatim as it does in the juvenile court's order.

between his release in January 2017 and his incarceration in February 2017. He then informed her that after his release in March 2017, he continued his IOP.

47.     In April 2017, Mother gave birth, and the child tested positive for illegal substances. [DCS] has since opened a case on that child and the case was pending.

48.     Mother has not screened for the Department since February 2017.

**There is a reasonable probability that continuation of the parent-child relationship poses a threat to the well-being of the child in that:**[2]

1.      Mother's visits with the Child have been suspended since November 2016 for substance use, and inconsistent attendance in visits. Mother went 8 weeks without seeing the Child prior to the suspension and tested positive for methamphetamine.

2.      Father's visits with the Child have been suspended since July 2016 due to Father's going a significant amount of time not seeing the Child and due to a substance abuse relapse.

****

4.      At the time of the fact-finding on May 19, 2017, Mother did not have stable employment.

5.      Mother admits that she has not completed any services during the CHINS case.

6.      Mother testified that she has been sober since November 2016, however, Mother has not provided screens to the Department or attended any substance abuse treatment.

7.      Since the March 31, 2017 hearing, Mother delivered her child who tested positive for illegal substances.

8.      [DCS] has since opened a case on Mother's new child, in which Mother again refuses to provide screens.

---

[2] Although the juvenile court lists the following facts as relating to whether the continuation of the parent-child relationship poses a threat to the well-being of L.H., we believe these facts are also relevant to whether there is a reasonable probability that the conditions leading to the removal from Parents' care will be remedied.

9.     Father is on work-release from jail and does not have stable housing and is not in a position to be able to have custody of the Child at the time of the fact-finding.

**\*\*\*\***

11.     Father stated that he will be completing IOP in a few days. Father admits that this is the first time during the duration of the CHIN[S] case that he has completed IOP. Father's participation in this program has occurred while he is on work release and had been ongoing for only about two and one-half months at the time of the hearing.

12.     Father admits that he has not completed any other service except the 21 day inpatient treatment at Tara.

13.     Father is hopeful that he will put on home detention after hiring an attorney to file a modification of his sentencing.

14.     Vanessa Smith of NYAP[3] testified that she received a referral for homebased case work with Mother.

15.     During Ms. Smith's time on the case, Mother never obtained stable housing, and never had stable employment. Further, Ms. Smith testified that Mother only met with her three times for homebased case management.

16.     Ms. Smith also received a referral to supervise Mother's visits with the child.

17.     While that referral was open Mother missed 25 out of 93 visits.

18.     Emilee Baker of NYAP received a referral for homebased case work and supervised visits for [F]ather.

19.     Ms. Baker testified that Father has never fully obtained her goals.

20.     Father had housing, employment, and transportation but in January 2016, he lost it all.

21.     Ms. Baker testified that in the end of April 2016, Father's compliance had started to lessen. He participated in 2 hours of

---

[3] "NYAP" stands for the "National Youth Advocate Program." *See* http://www.nyap.org/indiana/4576181149 (last visited November 30, 2017).

case management in May 2016, 30 minutes in June 2016, and did not participate in July 2016.

22. Ms. Baker testified that she was at the visit in July where Father appeared during Mother's visit. Ms. Baker described Father as disheveled and looking ill.

23. Lori Whaley of Ireland[4] received a referral from [DCS] for individual therapy for the child.

****

26. Ms. Whaley also testified that inconsistency with the child would be detrimental to her.

27. GAL testified that throughout the case Mother has stated that she does not need help.

28. GAL testified that she has concerns that Mother has not completed substance abuse treatment, and did not follow up on the recommendations from Tara upon Mother's release.

29. GAL testified that she has concerns around Mother's stability as she has had a lack of housing and employment throughout the duration of the case, including at the final hearing.

30. GAL testified that Father always had a plan upon release from incarceration. However, Father never followed through. Father was either rearrested or relapsed.

31. GAL also testified that she has concerns surrounding Father's sobriety as he has never been able to maintain his sobriety throughout the duration of the case.

32. According to the GAL, parents had the potential but they have never done what they needed to do to get the child placed back with them, and she did not know what would make them. Therefore, the GAL does not believe giving the parents more time to complete services would be in the child's best interest.

33. GAL testified that Mother has made no progress throughout the case and Father is nowhere further today than he

---

[4] "Ireland" refers to "Ireland Home Based Services." *See* http://ihbs.us/indiana-department-of-child-services/dcs-home-based-therapy/ (last visited November 30, 2017).

was at the beginning of the case, even though he has made more efforts than Mother.

Appellant N.B.'s Appendix Vol. II, pp. 61–67. In light of these findings, the juvenile court concluded that DCS had established by clear and convincing evidence that the reasons for the Child's removal from and continued placement outside Parents' home would not be remedied.

[18] We note that in claiming that the evidence was insufficient to support the juvenile court's order terminating their parental rights, Parents do not challenge the sufficiency of any particular finding, instead levying only the blanket assertion that the juvenile court's conclusion was not supported by the evidence. As a result, Parents have waived any argument relating to whether these unchallenged findings are clearly erroneous. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) (providing that when an appealing party fails to challenge the findings of the trial court, the findings must be accepted as correct); *In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (providing that failure to challenges findings resulted in waiver of argument that findings were clearly erroneous), *trans. denied*.

[19] On appeal, Parents merely assert that the juvenile court failed to consider evidence that they each claim demonstrates a change in circumstances. For his part, Father points to evidence that he claims shows that he had begun to make progress in improving his situation. Specifically, he points to (1) evidence indicating that he had passed three drug screens while on work release and (2) his self-serving testimony that he had saved enough money while on work

release to make a deposit for a stable housing situation for both he and L.H. following the completion of his work release sentence in December of 2017. For her part, Mother relies on her self-serving testimony that, as of the date of the evidentiary hearing, she had secured adequate housing and was sober.

[20] It is well-established that the juvenile court, acting as a trier of fact, was not required to believe or assess the same weight to the testimony as Parents. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993); *Nelson v. State*, 525 N.E.2d 296, 297 (Ind. 1988); *A.S.C. Corp. v. First Nat'l Bank of Elwood*, 241 Ind. 19, 25, 167 N.E.2d 460, 463 (1960); *Haynes v. Brown*, 120 Ind. App. 184, 189, 88 N.E.2d 795, 797 (1949), *trans. denied*. Parents' challenges to the sufficiency of the evidence to support the conclusions of the juvenile court effectively amount to invitations for this court to reassess witness credibility and reweigh the evidence, which, again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

[21] Upon review, we conclude that the juvenile court did not err in concluding that the conditions leading to the Child's removal from and continued placement outside's Parents' care were unlikely to be remedied. Having concluded that the evidence was sufficient to support the juvenile court's determination, and finding no error by the juvenile court, we need not consider whether the continuation of the parent-child relationship poses a threat to the Child's well-being because DCS has satisfied the requirements of Indiana Code section 31-35-2-4(b)(2)(B) by clear and convincing evidence.

# Conclusion

[22] Having concluded that the evidence is sufficient to support the juvenile court's order terminating both Father's and Mother's parental rights to the Child, we affirm the judgment of the trial court.

[23] The judgment of the trial court is affirmed.


Robb, J., and Crone, J., concur.