## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 16 2019, 10:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel G. Foote
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of T.C., Ti.C., and C.C. (Minor Children), and | January 16, 2019 |
| | Court of Appeals Case No. 18A-JT-1832 |
| C.A. (Mother), | Appeal from the Marion Superior Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Marilyn A. Moores, Judge |
| The Indiana Department of Child Services, | The Honorable Scott Stowers, Magistrate |
| *Appellee-Petitioner* | Trial Court Cause Nos. 49D09-1708-JT-742, -743, -744 |

**Crone, Judge.**

# Case Summary

C.A. ("Mother") appeals the trial court's order involuntarily terminating her parental rights to her minor children, T.C., Ti.C., and C.C. ("the Children"). She argues that the evidence is insufficient to support the trial court's termination of her parental rights. Finding the evidence sufficient, we affirm.

# Facts and Procedural History[1]

Following evidentiary hearings held in February, March, and May 2018, the trial court made the following findings of fact:[2]

> 1. C.A. is the mother of Ti.C., C.C., and T.C., all minor children.
>
> 2. Ti.C. was born on June 8, 2011, and is presently seven (7) years of age. C.C. was born on October 25, 2012, and is presently five (5) years of age. T.C. was born on January 17, 2014, and is presently four (4) years of age.
>
> 3. Ti.C., Sr. [("Father")] is the biological father of the children. He has signed adoption consents and has been dismissed from this Termination Action.
>
> 4. A Child in Need of Services ("CHINS") Petition was filed on the children on July 7, 2015, … following allegations of domestic violence and medical neglect. The Petition alleged that Mother had failed to follow through with her own mental health

---

[1] We remind Mother's counsel that an appellant's statement of facts "shall be in narrative form and shall not be a witness by witness summary of the testimony." Ind. Appellate Rule 46(A)(6)(c).

[2] The trial court's order references the parents and the minor children by their full names. We use "Mother," "Father," and the Children's initials where appropriate.

treatment.

5. The children were detained and ordered removed from their mother's care and custody at the July 8, 2015, "Initial/Detention Hearing."

6. The children were adjudicated to be CHINS on October 14, 2015, when their mother [submitted an admission and agreement for services admitting the children were CHINS and agreed that court involvement was appropriate].

7. Also on October, 14, 2015, the CHINS Court proceeded to disposition. Mother was ordered to participate in Home Based Therapy; Home Based Case Management; and Domestic Violence Services. The children remained removed from their mother's care and custody pursuant to the Dispositional Decree.

8. Angela Bolden of New Beginnings served as Mother's Parenting Aide from December 2015 to January 2017.

9. Ms. Bolden established the following goals for Mother: Employment; Housing; Medical Help; and Parenting Skills. Ms. Bolden also supervised parenting time between Mother and the children.

10. Mother was initially consistent with parenting time with three visits per week. Eventually, Mother's parenting time reduced to two per week and then to one per week.

11. When parenting time did occur, it went well for the children. When Mother did miss visits, it was hard on the children, especially on Ti.C. who exhibited negative behaviors.

12. Mother was able to secure employment and housing. Ms. Bolden assisted Mother with setting a mental health appointment. However, Mother failed to appear.

13. Mother's parenting skills improved, but still needed work.

14. Kia Hill of Lifeline supervised parenting time between Mother and the children from September 2017 to December 2017. During these visits, the atmosphere was often "chaotic" with the children "running wild" and jumping on furniture, and Mother making inappropriate comments to the children. Mother would sometimes bring a boyfriend to the visits. During one occasion, T.C. fell off a picnic table and suffered a minor injury while Mother was talking with the boyfriend.

15. Mother's participation with parenting time with Ms. Hill started out consistent. However, it became inconsistent and after several cancelled visits, in December 2017 Mother's parenting time was suspended.

16. The children had behavioral problems after parenting time with Mother.

17. Ms. Hill observed no bond between Mother and the children, and noted very little affection.

18. [The Indiana Department of Child Services ("DCS")] referred appropriate services to Mother, including Home Based Case Management; Home Based Therapy; Supervised Parenting Time; and Domestic Violence Services.

19. Although Mother did successfully complete Domestic Violence Services, she has not completed any other services.

20. Home Based Case Management was referred three separate times and Home Base[d] Therapy was referred four separate times. Despite these referrals, Mother failed to successfully complete them. Home Based Therapy was restarted in March 2018 … but she has a significant amount of work to do to make progress. Mother has been unsuccessfully discharged from Home Based Case Management.

21.  The children had been removed from their mother's care and custody under a dispositional decree for at least six (6) months prior to this Termination Action being filed on August 30, 2017.

22.  Mother's parenting time was suspended by the CHINS Court in December 2017 and she hasn't seen them since.

23.  The children have been placed in relative care with their paternal grandmother since the summer of 2017.  They are doing well and their medical and mental health needs are being met.  They are bonded with their grandmother and with each other.  The children have an established routine with their grandmother and are becoming a family unit.  This is a pre-adoptive placement.

24.  Carol Franklin provided Mental Health treatment to Mother from October 2017 to December 2017.  Although Mother did participate regularly, she made minimal progress and was unable to apply skills she had learned to everyday life.

Appealed Order at 1-3.

[3]     Based upon these findings of fact, the trial court concluded that: (1) there is a reasonable probability that the conditions that resulted in the Children's removal and continued placement outside the home will not be remedied by Mother; (2) there is a reasonable probability that the continuation of the relationship between Mother and the Children poses a threat to the Children's well-being; (3) termination of the parent-child relationship between Mother and the Children is in the Children's best interests; and (4) DCS has a satisfactory plan for the care and treatment of the Children, which is adoption. Accordingly, the trial court determined that DCS had proven the allegations of

the petition to terminate parental rights by clear and convincing evidence and therefore terminated Mother's parental rights. This appeal ensued.

## Discussion and Decision

[4] "The purpose of terminating parental rights is not to punish the parents but, instead, to protect their children. Thus, although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted). "[T]ermination is intended as a last resort, available only when all other reasonable efforts have failed." *Id.* A petition for the involuntary termination of parental rights must allege in pertinent part:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove that termination is appropriate by a showing of clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016). If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[5] "We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id.* at 92-93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

# Section 1 – DCS presented sufficient evidence to support the trial court's conclusion that there is a reasonable probability of unchanged conditions.[3]

[6] Mother first challenges the trial court's conclusion that there is a reasonable probability that the conditions that led to the Children's removal and continued placement outside the home will not be remedied.[4] In determining whether there is a reasonable probability that the conditions that led to the Children's removal and continued placement outside the home will not be remedied, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013). First, "we must ascertain what conditions led to their placement and retention in foster care." *Id*. Second, "we 'determine whether there is a reasonable probability that those conditions will not be remedied.'" *Id*. (quoting *In re I.A.*, 934 N.E.2d 1132, 1134 (Ind. 2010) (citing *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997))). In the second step, the trial court must judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing a parent's

---

[3] Mother briefly mentions that she is challenging three of the trial court's findings of fact in her summary of the argument, but she does not elaborate on or explain her challenge to those findings in the argument section of her brief. Accordingly, we do not separately address the evidence supporting those findings and simply look to the evidence in support of the trial court's findings and conclusions as a whole.

[4] Mother also challenges the sufficiency of the evidence supporting the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the Children's well-being. However, Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, such that, to properly effectuate the termination of parental rights, the trial court need only find that one of the three requirements of that subsection has been established by clear and convincing evidence. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied*. Accordingly, we will address the sufficiency of the evidence regarding only one of the three requirements.

recent improvements against "'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (quoting *K.T.K.*, 989 N.E.2d at 1231). "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[7] The Children were initially removed from the home due to allegations of domestic violence, medical neglect, unstable housing, and Mother's failure to follow through with her own mental health treatment. Mother then stipulated that the Children were CHINS and agreed to participate in multiple needed services. The record indicates that, in addition to concerns regarding Mother acting violently toward the Children, the Children have medical and mental health needs that Mother was failing to meet. Notwithstanding considerable efforts by service providers to address these concerns, Mother was unsuccessfully discharged from home-based case management and failed to complete home-based therapy. Although Mother initially participated consistently with visitation, she soon began canceling and missing visits, and her visitation was eventually suspended. Mother has not seen the Children

since December 2017. Prior to visitation being suspended, service providers observed no bond or affection between Mother and the Children. Mother failed to supervise and often interacted inappropriately with the Children, and they exhibited worsening behavioral issues after visiting with Mother. Service providers also noted that Mother did not show improvement in her parenting skills or interactions over the course of multiple visits. Although it appears that Mother did regularly participate in her own mental health therapy, the record indicates that she made very minimal progress and was unable to apply her learned skills. In sum, the evidence shows that other than domestic violence services,[5] Mother has been either unable or unwilling to successfully complete ordered services or make any meaningful progress in improving her parenting skills despite having almost three years to do so.[6]

[8] Mother asserts that there was evidence that she began to make some progress in services at the time of the termination hearing. However, it was the trial court's prerogative to balance Mother's recent progress against her habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. Mother essentially asks that we reweigh the evidence in her favor, and we will not. There is sufficient evidence to support the trial court's

[5] While the record provides that Mother was successfully discharged from domestic violence services, evidence was presented questioning the validity of that successful discharge due to her inconsistent participation in these services. In addition, one service provider testified that Mother hit one of the Children during a visit after Mother had been successfully discharged from domestic violence services, which indicated to the provider that Mother had not learned from those services. Tr. Vol. 2 at 110.

[6] The lion's share of Mother's arguments center around her belief that the Children should have never been adjudicated CHINS in the first place. These arguments are not well taken, especially in light of Mother's admission and stipulation to the contrary.

conclusion that there is a reasonable probability that the conditions that led to the Children's removal and continued placement outside the home will not be remedied by Mother.

## Section 2 – DCS presented sufficient evidence to support the trial court's conclusion that termination of Mother's parental rights is in the Children's best interests.

[9] Mother next challenges the sufficiency of the evidence to support the trial court's conclusion that termination of her parental rights is in the Children's best interests. In considering whether termination of parental rights is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the trial court must subordinate the interests of the parent to those of the child involved. *Id.* The trial court need not wait until the child is irreversibly harmed before terminating parental rights. *Id.* "The historic inability to provide adequate housing, stability, and supervision, coupled with the current inability to provide the same, will support a finding that continuation of the parent-child relationship is contrary to the child's best interests." *In re A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005). The testimony of service providers may support a finding that termination is in the child's best interests. *McBride,* 798 N.E.2d at 203.

[10] Here, two guardians ad litem ("GALs") who had been appointed to represent the Children, Jill English Cheatham and Joyce Box, each testified that they

believed that termination of Mother's parental rights is in the Children's best interests. They each had concerns about the length of time the case had been open and noted Mother's inability to make progress in services. They each also commented on the Children's strong bond with paternal grandmother. GAL Cheatham testified that she believed that returning the Children to Mother's care could "[a]bsolutely" be detrimental to them, and that adoption by paternal grandmother was in their best interests. Tr. Vol. 2 at 12. Similarly, GAL Box stated that Mother had "been given ample time to complete required services[,]" and that at this point the Children were in need of "a forever home." *Id.* at 117, 119.

[11] DCS Family Case Manager La'Shawn Lewis stated that she agreed with the GALs that termination of Mother's parental rights is in the Children's best interests and that their paternal grandmother could meet their long-term needs. She opined, "[W]e need to get these children in something more consistent, more permanent, um, stable, um because like I said, its been three years, they definitely need … permanency." *Id.* at 87. As our supreme court has often stated, "children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *K.T.K.*, 989 N.E.2d at 1230 (quoting *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011)). The evidence of unchanged conditions coupled with the testimony of service providers is sufficient to support the trial court's conclusion that termination of Mother's rights is in the Children's best interests.

## Section 3 – Adoption is a satisfactory plan for the care and treatment of the Children.

[12] Finally, Mother challenges the trial court's conclusion that adoption is a satisfactory plan for the Children. While the trial court must find that there is a satisfactory plan for the care and treatment of the child, "[t]his plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). Generally, adoption is a satisfactory plan. *Id.*

[13] The permanency plan here is for the Children to be adopted by their paternal grandmother. Mother's arguments against this plan are simply reiterations and requests that she be given more time to make progress before her rights are terminated. As we acknowledged above, this case has been open for almost three years. Decisions to terminate parental rights "are among the most difficult our trial courts are called upon to make" and are very fact sensitive. *E.M. v. Ind. Dep't of Child Servs.*, 4 N.E.3d 636, 640 (Ind. 2014). We will reverse a termination of parental rights only upon a showing of "clear error" – that which leaves us with a definite and firm conviction that a mistake has been made. *In re A.N.J.*, 690 N.E.2d 716, 722 (Ind. Ct. App. 1997). Based on the record before us, we cannot say that the trial court's termination of Mother's parental rights to the Children was clearly erroneous. Accordingly, the trial court's termination order is affirmed.

Affirmed.

Vaidik, C.J., and Mathias, J., concur.